# FLYNN & WIETZKE, P.C.

1205 Franklin Avenue, Suite 370
Garden City, N.Y. 11530
Tel: (516) 877-1234  Fax: (516) 877-1177

Marc Wietzke, Esq.
Admitted in NY & NJ

_____
Sean Constable, Esq.
Admitted in NY & MA

_____
Michael Flynn, Esq., Of Counsel

Offices throughout the Northeast
Toll Free: (866) 877-FELA

April 8, 2020

Judge Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*The request for a conference is DENIED. There has been no opposition letter submitted by defense counsel. It is hereby ordered that any opposition to Plaintiff's request for remote depositions is due by 5:00 p.m. on April 15, 2020. Any reply is due by 5:00 p.m. on April 16, 2020. The Court will determine whether a conference is necessary thereafter. SO ORDERED. 4/14/2020*

RE: SERVAT V. LONG ISLAND RAILROAD COMPANY
    19 Civ. 11237 (LJL)

SO ORDERED.

LEWIS J. LIMAN
United States District Judge

Dear Judge Liman:

Pursuant to Local Civil Rule 37.2, Plaintiff requests an informal conference with the Court regarding Plaintiff's intent to seek an Order, pursuant to Fed. R. Civ. P 30(b)(4) directing that the depositions of the parties and non-parties, should non-party testimony become necessary, be taken by telephone or other remote means. Defendant does not stipulate to conduct any depositions by remote means, necessitating a request for an order.

Fed. R. Civ. P 30(b)(4) states, "The parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means. For the purpose of this rule and Rules 28(a), 37(a)(2), and 37(b)(1), the deposition takes place where the deponent answers the questions." As noted in Local Civil Rule 30.2, "*The motion of a party to take the deposition of an adverse party by telephone or other remote means will presumptively be granted*. . . ." Emphasis added.

## FACTUAL BACKDROP

As is well known by this Court, but for the sake of establishing a record, New York, and indeed the Nation, is suffering under the burden of COVID-19, otherwise known as the coronavirus. The COVID-19 pandemic has led to various court orders, executive orders and national recommendations. These orders include avoiding non-essential travel, avoiding in person gatherings and maintaining at least six (6) feet of distance from any other person. To say that this makes the process of discovery more difficult is to put it lightly. However, in this day and age we fortunately have the technology to soldier on and keep the wheels of justice turning.

Despite, and indeed <u>because of</u>, the COVID-19 pandemic, courts within and without New York have been directing counsel to continue discovery by remote means, recognizing "COVID-19's unexpected nature, rapid spread, and potential risk establish good cause for remote testimony." *In re RFC & ResCap Liquidating Tr.* Action, No. 013-cv-3451(SRN)(HB), 2020 WL 1280931, at \*3 (D. Minn. Mar. 13, 2020); *Sinceno v. Riverside Church in City of New York*, No. 18-CV-2156 (LJL), 2020 WL 1302053, at \*1 (S.D.N.Y. Mar. 18, 2020) Hon. Lewis J. Liman)("ORDERED, pursuant to Fed. R. Civ. P. 30(b)(3) and (b)(4), that all depositions in this action may be taken via telephone, videoconference, or other remote means, and may be recorded by any reliable audio or audiovisual means") <u>Accord</u>, *Lipsey v. Walmart, Inc.*, No. 19 C 7681, 2020 WL 1322850, at \*2 (N.D. Ill. Mar. 20, 2020)  <u>See also</u>, *Air Charter Serv. (Fla.) Inc. v. Mach 1 Glob. Servs. Inc.*, No. 19CV3390PGGOTW, 2020 WL 1326429, at \*1 (S.D.N.Y. Mar. 19, 2020) ("In order to protect public health while promoting the "just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, it is hereby ORDERED, that counsel shall conduct work remotely. This includes, but is not limited to, client meetings, work meetings, and hand deliveries of courtesy copies to the Court (courtesy copies can be sent via email or mail).")[1]

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1  "The real purpose of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is to eliminate technicalities, delays and expense and secure prompt and effective adjudication on the merits when a cause of action is set forth." *Marin v. Knopf*, 1 F.R.D. 436, 437 (S.D.N.Y. 1940)  As noted at the outset, insofar as the taking of depositions is concerned, Courts have directed parties to continue discovery despite recognizing "the potential difficulty in the taking of depositions given the national emergency resulting from the outbreak of COVID-19, and the various orders and recommendations regarding the ability of person(s) to travel and/or occupy spaces in groups." *Jarrell v. Wright Nat'l Flood Ins. Co.*, No. 17-cv-00719-SDD-RLB, 2020 WL 1472909, at \*1 (M.D. La. Mar. 26, 2020).  Just three (3) weeks ago, on March 20, 2020, in a case against Norfolk Southern, the Hon. Lawrence R. Leonard, of the United States District Court for the Eastern District of Virginia ordered

In light of the national emergency declared by the President of the United States, no proposed deposition witness will be required to travel for a

---

[1] The *Sinceno* Court went so far as to consider some of the practical questions that arise form remote testimony, stating

unless the parties stipulate otherwise, the deposition be "conducted before an officer appointed or designated under Rule 28," and that the deponent be placed under oath by that officer. For avoidance of doubt, a deposition will be deemed to have been conducted "before" an officer so long as that officer attends the deposition via the same remote means (*e.g.,* telephone conference call or video conference) used to connect all other remote participants, and so long as all participants (including the officer) can clearly hear and be heard by all other participants. *Sinceno*, <u>supra</u>,

Several State governments have issued modifications to their notary requirements to accommodate the COVID-19 pandemic, including New York (https://www.governor.ny.gov/news/no-2027-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency) Florida (https://www.floridasupremecourt.org/content/download/632105/7182680/AOSC20-16.pdf) and Wisconsin (https://www.wicourts.gov/news/docs/oaths.pdf) Of note for this application, Wisconsin's Order specifically acknowledges that it is done to enable the taking of depositions remotely.

deposition, and instead all depositions shall be taken by video or telephonic means, unless counsel for the parties and the witnesses themselves unanimously agree otherwise.

*Doss v. Norfolk Southern Rwy. Co.,* Case No. 2:19-cv-502, Dkt. No. 26 (EDVA March 20, 2020)

That direction is not surprising, considering Norfolk Southern itself boasted on its website about its capabilities a day later. [2] Nor is Norfolk Southern alone. CSX,[3] Union Pacific,[4] BNSF,[5] Amtrak and LIRR have all appropriately initiated remote working for employees where that is feasible to abide the stay-home orders across the country.

## PLAINTIFF'S EFFORTS TO GAIN CONSENT

When the first stay-home orders were discussed, plaintiff's counsel approached defense counsel in an effort to secure a stipulation with regard to continuing discovery as efficiently as possible (which has included agreeing to accept discovery demands and responses via e-mail), but also to make arrangements to conduct depositions remotely in this case as well as several others between the offices.

To obviate practical concerns, the undersigned also agrees to: 1) accommodate the schedule of a given witness, conducting the deposition early or late, based on witness availability; 2) arrange for recording of the remote testimony; 3) arrange for a stenographer to remotely capture the testimony; and 4) set up the means of communication (i.e. through Zoom, Teams, Skype, Hangouts or WebEx). In fact, if absolutely necessary, plaintiff will even send via overnight delivery a computer with mobile hotspot for any witness that does not have access to a computer with internet connection (with the proviso that it gets returned timely).

Nonetheless, Defendant refuses to do depositions remotely. Actually, the railroad objects to conducting any depositions whatsoever until a date it chooses. More specifically, on April 3, 2020 the supervising counsel for the railroad stated:

---

[2] NS: "Norfolk Southern is adhering to health and hygiene guidelines issued by the Centers for Disease Control and Preparedness. That includes implementing social distancing procedures for essential personnel whose job duties require them to work at office locations. Where feasible for other personnel, *we are working remotely using the technology and communication infrastructure* necessary to address the needs of our customers as they arise. Emphasis added. http://www.nscorp.com/content/nscorp/en/covid-19-updates/covid-19-update-customers-partners-3-21.html, accessed on April 8, 2020.

[3] CSX: "CSX also has robust business continuity plans to minimize any potential operational impact. Our continuity plans include backup facilities where business-critical functions are able to quickly transition and continue seamless train operations. *We have also implemented remote work arrangements for employees* whose job functions permit and are modifying work areas to create appropriate social distancing where needed." Emphasis added. https://www.csx.com/index.cfm/about-us/safety/csx-coronavirus-prevention-and-response/, accessed on April 8, 2020.

[4] UP: "Union Pacific is: Implementing alternative work location policies designed to increase social distancing."

https://www.up.com/cs/groups/public/@uprr/@corprel/documents/up_pdf_nativedocs/pdf_up_ucm_covid19_heath.pdf, accessed on April 8, 2020.

[5] BNSF: "To minimize the risk of transmission to those employees who cannot perform their work remotely, *we are encouraging those who can work from home to do so.* We believe this is the most effective way to protect those who must be on site for their duties, while also protecting those that are able to work from home." Emphasis added. https://www.bnsf.com/coronavirus-response.page, accessed April 8, 2020.

As to your suggestion to proceed with depositions via Video Conferencing (eg. Zoom, etc.), please be advised that it is the Law Department's position that we will not participate in video depositions until such time that the NYS Order is lifted. We have significant reservations regarding the use of sites like Zoom regarding their security. As you may know, the FBI issued warnings today highlighting this problem. In addition, we are not convinced that the use of Video Conferencing to conduct depositions is appropriate. For example, we have no way of knowing who may be present with a witness during the proceeding, or what that witness may be referring to during the course of the examination. The production of defense witnesses also causes concerns as we progress toward the apex of this pandemic. Namely, that many LIRR employees are falling ill and are unavailable. Further, many proposed defense witnesses may not possess the necessary computer/technology to participate in this type of conference.

My staff and I have held multiple conferences with various Federal Court judges in the past 2-3 weeks, some with your office. Our uniform experience has been that the judges are highly sensitive to the present exigent circumstances, issuing generous discovery deadlines or extensions, based on the type of conference. They have also indicated their willingness to employ a "wait and see" approach when deadlines arrive and to reevaluate where we are vis-à-vis the pandemic concerning the ability to conclude discovery.

The LIRR Law Department will reassess this stated position once the 4/30/20 date arrives.

It is because of the inability to secure an agreement to move forward with discovery that plaintiff comes to the Court seeking an Order.

## LEGAL ARGUMENT

Whether it is Zoom, Hangouts, Skype or WebEx, the use of technology for remote testimony is not a new concept. However, in *Brown v. Carr*, 253 F.R.D. 410, 412 (S.D. Tex. 2008), the Court observed that as the party seeking to take testimony by remote means, plaintiff must establish a legitimate reason for its motion. *See Brown v. Carr,* 236 F.R.D. 311, 312 (S.D.Tex.2006) (citing *Cressler v. Neuenschwander,* 170 F.R.D. 20, 21 (D.Kan.1996)). Before we were confronted with any justification so pressing as a global pandemic, courts have recognized that merely saving the cost and travel time incurred in traveling from Texas to Georgia was sufficient grounds for granting a request for remote testimony. *Abou-El-Seoud v. United States*, 130 Fed. Cl. 563, 564 (2017). Any party opposing such depositions has the burden to establish good cause as to why they should not be conducted in such manner. *Brown,* 236 F.R.D. at 312 (citations omitted). Generally, leave to take depositions by remote electronic means should be granted liberally. *See Jahr v. IU Int'l Corp.,* 109 F.R.D. 429, 431 (M.D.N.C.1986) (addressing telephonic depositions); *see also Robertson v. Vandt,* No. 1:03–cv–6070, 2007 WL 404896 (E.D.Cal. Feb.2, 2007) (granting request for a deposition by video-teleconference) (unpublished). Accord, *Fontenot v. Wal-Mart Stores, Inc.,* No. 6:15-CV-01972, 2016 WL 3082925, at *1 (W.D. La. May 31, 2016); *Carrico v. Samsung Elecs. Co.,* No. 15-CV-02087-DMR, 2016 WL 1265854, at *1 (N.D. Cal. Apr. 1, 2016) Indeed, it bears repeating, Local Civil Rule 30.2 dictates that "*The motion of a party to take the*

*deposition of an adverse party by telephone or other remote means will presumptively be granted.*

In 1980, Rule 30(b) was "amended to further encourage the use of and experimentation in taking depositions which are recorded by other than stenographic means. Previously, a party had to apply for a court order. With the 1980 amendment, the parties could stipulate to a non-stenographic deposition. The Advisory Committee Notes state the purpose for this amendment was to encourage use of electronic depositions." *Jahr v. IU Int'l Corp.,* 109 F.R.D. 429, 430–31 (M.D.N.C. 1986) The *Jahr* Court found that FRCP 30(b)(4) had the "purpose of reducing the cost of federal litigation by providing alternatives to traditional stenographic depositions. The courts have not required a showing of extraordinary circumstances before granting Rule 30(b)(4) motions. *See* 8 Wright, Miller & Elliot, *Federal Practice and Procedure* § 2115 at 176–181 (Supp.1985). Likewise, no reason appears for imposing harsh or unusual requirements before permitting telephonic depositions.

The *Jahr* Court went on to conclude that "because of the history and similar purpose of subsections (b)(4) and (b)(7), . . . leave to take telephonic depositions should be liberally granted in appropriate cases. . . . However, until experience demonstrates otherwise, no reason now appears for establishing a rule requiring the moving party to show necessity. Thus, upon giving a legitimate reason for taking a deposition telephonically, the movant need not further show an extraordinary need for the deposition. Rather, the burden is on the opposing party to establish why the deposition should not be conducted telephonically. *Jahr v. IU Int'l Corp.,* 109 F.R.D. 429, 431 (M.D.N.C. 1986) Accord, Federal Civil Rules Handbook at 838 (2019) ("Generally, leave to take depositions by remotes means will be granted liberally.") fn 56, citing *U.S. v. One Gulfstream G-V Jet Aircraft Displaying tail Number VPCES* , 304 F.R.D. 10, 17, n. 4 (D.D.C. 2014) and *Webb v. Green Tree Servicing LLC,* 283 F.R.D. 276, 280 (D. Md. 2012).

Here, the COVID-19 pandemic certainly constitutes "a legitimate reason" for taking the depositions remotely.

To anticipate the railroad's opposition in this case, the *Jahr* Court ruling, from 1986, 34 years ago, is insightful.

> In civil cases, the better rule is that a request for a telephonic deposition should not be denied on the mere conclusory statement that it denies the opportunity for face-to-face confrontation. Unlike criminal cases, depositions of unavailable witnesses are routinely read to the jury. Reading a telephonic deposition will be no different than reading any other deposition. The only change created by a telephonic deposition is that the attorneys cannot see the witness. However, telephone conferences are becoming an increasing reality in business and law. Finally, lack of face-to-face questioning is the very essence of a telephonic deposition. Acceptance of defendants' argument would be tantamount to repealing subsection (b)(7). Thus, the party opposing the telephonic deposition must come forward with a particularized showing as to why a telephonic deposition would prejudice it.

*Jahr v. IU Int'l Corp.*, 109 F.R.D. 429, 432 (M.D.N.C. 1986)

Further anticipating the railroad's claim of the need to show witnesses exhibits during depositions, including documents and photographs, technology has made it possible to move forward.

> modern videoconference software permits participants to quickly and conveniently share documents and images with each other. [. . .]. The *Lopez* court concluded that the burden of flying out of town (from California to Florida) for a deposition outweighed the minimal burden of remotely reviewing documents.

*Carrico v. Samsung Elecs. Co.*, No. 15-CV-02087-DMR, 2016 WL 1265854, at *2 (N.D. Cal. Apr. 1, 2016), citing *Lopez v. CIT Bank, N.A.*, No. 15-cv-00759 (BLF)(HRL), 2015 WL 10374104, at *2 (N.D. Cal. Dec. 18, 2015)

The Court in *Lopez*, five (5) years ago, went deeper in its discussion of available, acceptable, options (e.g. Skype and Hangouts), as if anticipating the railroad's resistance here.

> This court has repeatedly observed that remote videoconference depositions conducted through software like Skype tend to be an effective and efficient means of reducing costs. *Guillen v. Bank of America Corp.,* Civ. No. 10–5825–EJD (PSG), Dkt. No. 78 at 1–2; *see also Trejo v. Macy's Inc. et al.,* Civ. No. 13–2064–LHK, Dkt. No. 52 at 2–3. . . . Defendants' counsel has argued that technical problems might make remote depositions ineffective, Dkt. No. 58 at 2–3, but the court rejects that argument as speculative. Plaintiffs' counsel asserts that he has conducted "more than" eight remote depositions within the last year and that those depositions were "effective, efficient and cost effective." Dkt. No. 55 at 2. Plaintiffs' counsel has experience with conducting remote depositions, and the parties can work together to select a reliable and effective means for taking remote depositions in this case.

> Defendants also argue that reviewing several complicated exhibits remotely would be impracticable and that, in contrast, traveling between California and Florida for depositions would be less burdensome. Dkt. No. 58 at 3–4. The court disagrees. Modern videoconference software permits participants to quickly and conveniently share documents and images with each other. For instance, Google's Hangouts software permits a conference call participant to broadcast a live video feed of a digital document while she reviews that document on her computer, which allows for the convenient joint review of specific pages contained within complicated documents. Similarly, the court is not persuaded that it would be burdensome to discuss complicated documents through a phone call if each phone-call participant has received Bates-stamped copies of the documents. The court therefore believes that the burden of flying out of town for a deposition outweighs the minimal burden of remotely reviewing documents.

*Lopez,* supra, 2015 WL 10374104, at *2.

Back in 1987, the Court in *Rice's Toyota World, Inc. v. Se. Toyota Distributors, Inc.,* 114 F.R.D. 647, 648–50 (M.D.N.C. 1987) explicitly considered the regular objections to video depositions:

In applying Rule 30(b)(4) to video depositions, courts have good reason to be receptive to experimentation while not demanding cost efficiency as an essential condition. At the present time, a wish to reduce costs usually has little to do with a request to take a video deposition. Rather, the movant is more concerned with accuracy, trustworthiness, and improved judicial procedures, all of which are also major interests expressed in the Fed.R.Civ.P. 30 advisory committee notes. A video deposition better serves these objectives by permitting the fact-finder to utilize a greater portion of his perceptive processes then when merely reading or listening to a stenographic deposition. While we often make decisions by written word alone, when it comes to determining facts by comparing the testimonies of one or more persons, we do a better job by being able to employ as many of our senses as possible. Personally observing the witness is preferable. Next in rank would be viewing a video deposition where one directly uses the combined senses of hearing and seeing without the filtering process that occurs when one listens to a deposition being read or reads it himself from the cold record which excludes pitch and intonation of voice, rapidity of speech, and all the other aural and visual clues. Thus, it is not surprising to find in *Sandidge v. Salen Offshore Drilling Co.,* 764 F.2d 252, 259 (5th Cir.1985), the court listing the "legion of cases" which have extolled the advantages of video depositions and preference for their use in a trial, noting that a witness' demeanor reflected in his motions, expressions, voice inflections, etc., give the fact-finder a unique advantage in evaluating evidence, resulting in appellate courts granting greater deference to such findings. Video depositions can markedly increase accuracy and trustworthiness. In addition, to the extent that a video deposition reduces tedium, the fact-finder's concentration and attention will be enhanced, again to the benefit of the decision process. One court, faced with an entire trial presented through video depositions, agreeably anticipated the greater convenience and freedom in scheduling the trial which it would permit. *Lucien v. McLennand,* 95 F.R.D. 525 (N.D.Ill.1982).

The foreseeable hazards of relying on video depositions lie in the fact that there may be equipment failures and without court supervision over the attorneys, the record might not be suitable for use at trial. *Barham v. IDM Corp., supra.* To guard against such perils, some courts require a simultaneous recording by a stenographer. *Id.* Making and ruling on objections in order that the deposition may be used at trial may be another potential problem peculiar to a video deposition. Such procedure is simple with a stenographic deposition by reference to page and line where the objection appears which may then be studied by reading it.

*Rice's Toyota World,* supra.

The Court in *Guillen v. Bank of Am. Corp.,* No. CIV. 10-05825 (EJD), 2011 WL 3939690, at *2 (N.D. Cal. Aug. 31, 2011) granted plaintiff's motion to conduct depositions via telephone and/or Skype video conference (and simultaneously record such), after noting that "Plaintiff's counsel has conducted five (5) Skype video depositions this year, including two recently, ordered by the Hon. Paul Grewal; the method is effective and efficient."

Here too, plaintiff is content to use Skype (owned by Microsoft and currently being used by the New York State Court System to handle criminal arraignments and

hearings), Microsoft Teams (a more feature-laden form of Skype), Google Hangouts, Cisco WebEx or Zoom. With regard to the latter, recent news items regarding the "security" of the platform are largely a misunderstanding of how to use it. The "Zoombombing" that has captured the media's attention of late, is the equivalent of someone throwing open a conference room door during a deposition, yelling a vulgarity, and then running away. Using the password feature and waiting room feature of Zoom obviates the concern entirely.

## CONCLUSION

All of these platforms permit simultaneous viewing of and by all participants, screen sharing, to enable exhibits displays, audio connection over computer speakers or through separate telephone connection and Zoom even permits enabling a mark-up annotation feature, allowing witnesses to draw on exhibits on-screen. (The other platforms may allow the annotation feature in a more cumbersome way as well.) The point is, there is just no justification for allowing the railroad to place a unilateral indefinite hold on all progress in the case. Plaintiff was injured by the railroad's negligence and any delay only benefits the railroad and prejudice's the plaintiff. Telephonic depositions have been permitted for 40 years under the FRCP. Remote means as proposed by plaintiff are only the next iteration, allowing the legal process to proceed so plaintiff may have a resolution of all claims.

For the foregoing reasons, plaintiff seeks the Court's permission to conduct all depositions by remote means in order to progress the case and continue to meet deadlines.

Respectfully submitted,

Marc Wietzke

MW:EF
Cc: Christopher J. Pogan, Esq.